[No. 1149.   Decided March 13, 1894.]

Z. C. MILES COMPANY, OF SEATTLE, WASHINGTON, *Appellant*, v. F. GORDON *et al.*, *Appellants*, R. P. MATHEWS *et al.*, *Respondents*.

PARTNERSHIP — WHAT CONSTITUTES — MECHANICS' LIENS — REPAIRS BY LESSEE — WHEN OWNER NOT BOUND.

Partnership between the lessor and the lessees of premises is not constituted by an agreement that the lessor shall have as rent therefor one-half of all the profits realized above expenses by the lessees in managing the premises as a sanitarium, although the agreement may provide that the board and lodging of the families of the lessees while residing on the premises and engaged in said management, and their necessary personal expenses while engaged therein, may be included in computing expenses, "but they are to receive no other compensation for their services," when all the other terms of the agreement indicate that it was intended by the parties as a lease.

The liens of mechanics and material men for labor performed and material furnished in the alteration and repair of a building at the instance of a lessee thereof attach only to the leasehold interest, and do not bind the owner, in the absence of authority to the lessee to act as his agent.

*Appeal from Superior Court, King County.*

*Wiley & Bostwick,* for appellant.

*John P. Fay, C. H. Gest,* and *W. T. Scott,* for respondent Northwestern Trust Company.

The opinion of the court was delivered by

DUNBAR, C. J. — This is an action to foreclose a material man's lien on block fifteen, of East Seattle. The appellant Z. C. Miles Company furnished materials and performed labor in the alteration and repair of the building known as the Hotel Calkins, in putting in a steam heating plant. The defendant Northwestern Trust Company being the owner of the ·property sought to be charged, entered into an agreement with the defendants H. T. Turner and R. P. Mathews to operate the East Seattle Sanitarium. Mathews and Turner, finding that the building was unsuitable for the business in which they were engaged, that of caring for the sick, informed Mr. Baird, who it is claimed represented the Northwestern Trust Company, of the fact that they intended to put in a steam heating plant, and asked Mr. Baird if the Northwestern Trust Company would not advance three hundred dollars to assist in making the improvement. Mathews and Turner afterward withdrew this application, stating that they could get along without the assistance of the Northwestern Trust Company, and ordered the materials from the Z. C. Miles Company, and proceeded to put in the steam heating plant. Z. C. Miles Company failing to get their pay filed their lien. C. N. Workman, a carpenter, and Frank Gordon, a plumber, also did some work on the improvement and filed a lien for the same. The court below rendered a judgment in favor of the respondent Northwestern Trust Company, from which judgment an appeal was taken to this court.

There are some objections to the liens filed in this case

urged by the respondents which it is not necessary for us to discuss, as the view we take of the question which lies at the threshold of the case obviates that necessity. It becomes necessary to construe the agreement between the Northwestern Trust Company and Mathews and Turner. This agreement, respondents contend, is a lease, while appellant's contention is that it is a partnership agreement, and that, the Northwestern Trust Company being partners under that agreement with Mathews and Turner, they are responsible for the improvement made. That portion of the agreement which it is necessary to review is as follows:

"This agreement, made and entered into this 8th day of December, A. D. 1891, by and between 'Northwestern Trust Company, of Seattle,' a corporation duly organized, existing and doing business under the laws of the State of Washington, hereinafter called the party of the first part, and R. P. Mathews and Henry T. Turner, of Seattle, King County, Washington, parties of the second part:

"Witnesseth, that for and in consideration of the terms, agreements and covenants hereinafter made by said second parties, the said first party does hereby lease, demise and let unto the said second parties the following described premises, property, rights and easements, situate in the county of King, and State of Washington, to wit:

"All of blocks numbered fourteen, fifteen, sixteen and thirty-seven, in East Seattle, according to the plat thereof on file and of record in the office of the county auditor in and for said county of King, and the buildings known as the 'Hotel Calkins,' with the furniture, fixtures and appurtenances therein, and together with the electric power house and dynamo and other machinery therein, and all other buildings and improvements of whatsoever nature upon said described blocks. Together with the right to take water from the spring in what is known as 'Maple Place' for use on said leased premises, and the right to maintain pipes, conduits and other convenient means for the purpose of conducting water from said spring to a neighboring street; and the right of access and use and

right-of-way to said spring from such street, convenient for
effecting the foregoing rights, and the use of said water
and the maintenance of said pipes, conduits and other
means of conducting said water; said spring being the same
now supplying water for said premises.    Together with all
hereditaments and appurtenances thereunto belonging, ex-
cepting only a certain building situated on block numbered
sixteen, aforesaid, known and used as the waiting room at
the boat landing.

"To have and to hold the said described premises, prop-
erty rights and easements unto the said parties of the
second part, their heirs, executors, administrators and as-
signs, for the term of one year from the first day of January,
A. D. 1892, to the first day of January, A. D. 1893, to be
used as a sanitarium by said second parties.

"Said parties of the second part promise, covenant and
agree to pay as rent for said premises, property rights and
easements and as full compensation for the use thereof,
one-half of the amount realized by them as profits from
said use during said term, above all expenses including
advertising to an amount not to exceed five thousand dol-
lars per annum, payable at the end of said year.    In com-
puting said expenses the board and lodging of said second
parties and of their wives while residing on said premises
and engaged in said management, and said second parties'
actual necessary personal expenses while engaged upon the
business of said sanitarium are to be included; but they
are to receive no other compensation whatsoever for their
services."

It seems to us that this agreement cannot be construed
to be a formation of a partnership in any sense.    It pur-
ports to be a lease.    It is recited in the instrument itself
that it is a lease, and while, of course such recitation would
not make it a lease if the elements of partnership were in
the agreement, yet it seems to us that these elements are
entirely wanting.    Leases which provide for a division of
the profits are of common occurrence in the business world.
This instrument provides that the parties of the second
part agree to pay as rent for said premises one-half of the

amount realized by them as profits from said use during said term above all expenses, and the latter part of the paragraph, which is commented upon by appellants, concerning the boarding and lodging of the said second parties and their wives, it seems to us has no tendency to take the agreement out of the catalogue of leases, but is simply an additional and specific agreement of what the expenses shall consist of, or what particular expenses the lessors shall be bound for.

It is true that there is an agreement here to share the profits, but on the other hand there is no agreement to share the losses, which is the ordinary test of a partnership. We know of no reason why a person who has a house, or a farm, or any other character of property which he is desirous of leasing, shall not be allowed to make his own terms as to what the payment shall consist of, whether, in the case of a farm, it shall be for one-half of the gross amount of grain raised, or for one-half of the amount of grain raised after the expense of putting in and harvesting the crop are deducted, or for a certain number of bushels of grain without regard to the amount raised, or for a certain specified sum of money. In each instance the amount agreed upon is intended as a payment for the use of the premises; and in the case at bar it seems that nothing more is imported into this contract than is generally found in contracts of lease.

The contract further provides for a renewal of the lease for the term of five years at the option of the lessees; for the yearly rental of said premises and property to be paid in case of renewal; for the right of assignment of the leasehold interest, and all the ordinary rights of the lessee in such cases.

We think, from an investigation of the instrument, that it was the intention of the parties to enter into a lease, and not a partnership, and that there is nothing expressed in

the instrument which will bind them as partners.    Construing, then, the instrument to be a lease, instead of a partnership agreement, Mathews and Turner are in no sense the agents of the Northwestern Trust Company, and can in no way bind them by their contract with the material men or workmen.    Their liens could only extend to the right of Mathews and Turner in the property, which was in this case a leasehold interest.

The judgment will, therefore, be affirmed.

STILES, HOYT, ANDERS and SCOTT, JJ., concur.