[No. 24980.   Department Two.   September 20, 1934.]

ELSBETH G. GEHR, as *Administratrix, Respondent,* v.
FERRY COUNTY, *Respondent,* C. THOMPSON *et al.,*
*Appellants.*[1]

*John T. Raftis* and *J. M. Adams,* for appellants.

*William T. Beck* and *Merrick & Kelly,* for respondents.

BLAKE, J.—Prior to March 9, 1927, Ferry county, through foreclosure proceedings, acquired title to property known as the Republic mine.  On the date

[1]Reported in 36 P. (2d) 71.

mentioned, the county entered into a lease and option agreement, covering the property, with Alex McKay. March 15, 1929, McKay assigned his interest in the lease and option to H. B. Gehr, the plaintiff herein. We are here concerned with only three provisions of the lease and option: (a) The lease was for five years from March 9, 1927; (b) the lessee, by its terms, was required to work thirty shifts a month, with at least two men; (c) the lessee had the right to purchase the property for fifteen thousand dollars at any time during the life of the lease. When the lease expired, March 8, 1932, the lessee had performed all his obligations under the lease, but had failed to exercise his option to purchase.

Shortly before the expiration of the lease, the lessee brought this action, praying that Ferry county be enjoined from canceling the lease and option. The pretext for such procedure is not clear from the complaint, but from the evidence it appears that plaintiff had a very promising prospect of raising the necessary money to exercise his option to purchase the property, and desired an extension of the lease to enable him to do so. The county commissioners, individually, were sympathetic with plaintiff's application for further time. As a board, however, they declined to enter into any extension agreement. The plaintiff, however, was permitted to remain in possession of the property until June 8, 1932, when, the plaintiff declining to peaceably surrender, the board adopted a resolution directing the prosecuting attorney to take such steps as were necessary to repossess the property and quiet the county's title therein.

In the meantime, subsequent to March 8, 1932, plaintiff had continued his operations on the property. Among persons employed by him during this period were P. J. Millett, C. Thompson, Guy Eastman and

Roy Eastman. All of these men continued to work several weeks, even after June 8th. All of them knew that Gehr's lease had terminated by its terms, but they continued to work upon assurances by Gehr that the lease would be extended and that they would be paid. They do not claim that any such representations were made to them by the county commissioners, or any one connected with the county in an official capacity.

Millett and Thompson filed claims for labor on September 21, 1932, by which it appears that the former ceased work on August 22nd, and the latter on June 25th. Guy and Roy Eastman filed liens for labor October 21, 1932, by which it appears that both ceased work on August 19th.

All the while, the action brought by Gehr had remained in abeyance. In January, 1933, however, the county filed an answer and cross-complaint, seeking to dispossess Gehr and quiet title to the property. The above-named lien claimants were brought in as parties defendant. They filed answers and cross-complaints, seeking to recover their wages and foreclose their liens against the property. The court held that the claims of lien had not been timely filed, denied foreclosure, and entered judgment quieting title to the property in the county. The lien claimants, Millett, Thompson and the two Eastmans, appealed.

In their brief, appellants state their position as follows:

"(1) That the lease and option which terminated by its terms on March 9th, 1932, was in fact expressly and impliedly extended.

"(2) That respondents are estopped in equity to assert that said lease and option was not extended.

"(3) Regardless of any extension, respondent Ferry County, with complete knowledge of the facts, and without notice or objection, accepted and retained valuable benefits and improvements, and is estopped

to deny the validity of the liens for labor performed herein.''

■ There is no evidence whatever to support the contention that there was an express extension of the lease and option. The board of county commissioners, in its official capacity, took no action in regard to the lease until it adopted the resolution of June 8th, directing the prosecuting attorney to take such steps as were necessary to recover possession of the property.

■ Likewise, with respect to the contention of implied extension and estoppel, we find no evidence to sustain either. We find nothing in the county's conduct in allowing Gehr to remain in possession of the property unmolested until June 8th to create an estoppel. It was merely an indulgence granted with the hope that he might be able to raise the money to take up the option. His possession was not made contingent on the performance of further work on the property. What he and appellants did subsequent to the termination of the lease on March 8th was as volunteers—not under the authority of the county or of anyone authorized to speak in its behalf.

■ Appellants seem to contend that Gehr was an agent of the county, and that, since their work was done at his instance and request, the county was liable for their wages and the property was subject to liens therefor. For labor performed during the term of the lease, the property would have been subject to lien, because of the provision in the lease requiring the lessee to maintain at least thirty shifts a month in operating the property. Otherwise, the property would have been subject to liens for labor only to the extent of Gehr's interest in the property, namely, the leasehold. *Miles Co. v. Gordon,* 8 Wash. 442, 36 Pac. 265; *Dahlman v. Thomas,* 88 Wash. 653, 153 Pac. 1065. But that provision in the lease did not make Gehr the agent of the

county further than to charge the property with liens for labor performed, at his instance, pursuant to the provisions of the lease. *Blossom Provine Lumber Co. v. Schumacher,* 147 Wash. 369, 266 Pac. 167.

An estoppel can be created against a municipal corporation only by one authorized to act or speak in its behalf. No one, even in apparent authority to speak for the county, induced the appellants to continue work on the property.

By the same token, the appellants cannot prevail on their third theory. Conceding the work done by appellants subsequent to the expiration of the lease was beneficial to the property, it was not done at the behest of the county or at the behest of anyone authorized to speak for it. In this respect, the evidence is insufficient to bring the case within the principle invoked by appellants. That principle is simply this: That, where a municipal corporation has entered into a contract which for some reason may be void (either through jurisdictional defect in the proceedings leading up to the contract or want of authority of the officer undertaking to bind the municipality), the municipality will not be permitted to retain the benefits of labor and material furnished pursuant to the contract without paying the reasonable value thereof. *Green v. Okanogan County,* 60 Wash. 309, 111 Pac. 226, 114 Pac. 457; *Mallory v. Olympia,* 83 Wash. 499, 145 Pac. 627; *Besloff v. Whatcom County,* 133 Wash. 109, 233 Pac. 284; *Strong & McDonald v. King County,* 147 Wash. 678, 267 Pac. 436; *Jones v. Centralia,* 157 Wash. 194, 289 Pac. 3; *Abrams v. Seattle,* 173 Wash. 495, 23 P. (2d) 869.

In all of these cases, there was real or apparent power in the body or officer entering into the contract to bind the municipality. The work was done pursuant to the contract, and the municipality was enjoying the

benefits of it. The principle has never been carried so far as to require a municipality to pay for labor performed on its property at the behest of a stranger (as Gehr was in this instance) to the municipal government.

Judgment affirmed.

BEALS, C. J., TOLMAN, HOLCOMB, and GERAGHTY, JJ., concur.